UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Cesar Lopez,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>Coker University, Brianna Bunce Douglas, Whitney Watts, Robert L. Wyatt, and John Does 1-5,<br><br>　　　　　　　Defendants. | C.A. No.: 4:20-cv-02049-SAL |

## **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Coker University ("Coker" or the "University"), and the Individual Defendants, Brianna Bunce Douglas ("Douglas), Whitney Watts ("Watts"), and Robert L. Wyatt ("Wyatt") (collectively, the "Individual Defendants"), have moved to dismiss the Complaint's claims arising under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88 ("Title IX") (Causes of Action 1 and 2); Plaintiff's claim of a due process violation, presumably arising under the United States Constitution and the 14th Amendment (Cause of Action 3); and Plaintiff's negligence claims (Cause of Action 4) arising under the State laws of South Carolina. The University has also moved to dismiss the breach of contract/breach of good faith and fair dealing claim (Cause of Action 5) against it. Even if the Complaint is sufficient to state a claim or claims against the University, it is not sufficient as a matter of law to state a claim against any of the Individual Defendants, who were all employees of the University at all times relevant to this complaint. The Motion is based on the grounds, authorities, and the attached exhibits set forth and discussed more fully below.

**PROCEDURAL HISTORY**

Plaintiff, Cesar Lopez ("Lopez"), commenced this lawsuit on April 29, 2020, by filing his Complaint in the Darlington County Circuit Court. Plaintiff, a male, is a former student of the University. His Complaint alleges the following causes of action against all Defendants: 1) Title IX – Gender Discrimination/Selective Enforcement/Deliberate Indifference; 2) Title IX – Erroneous Outcome; 3) Denial of Due Process/Equal Protection under the United States Constitution; and 4) Negligence/Gross Negligence. He alleges a Breach of Contract/Breach of Covenant of Good Faith and Fair Dealing claim against the University. All claims are based on allegedly wrongful acts taken by Defendants regarding Lopez in connection with accusations made by a female student, promptly established to be false, that Lopez sexually assaulted her.

In a related action, on April 28, 2020, Lopez filed *Lopez v. Greer*, *et al.,* (hereinafter, referred to as, the "Hartsville Complaint"), a complaint against the City of Hartsville, the Hartsville Police Department, and several of its employees alleging various constitutional and other violations which arise out of the same allegations of sexual assault against Lopez that are the subject of the instant Complaint. The Hartsville Complaint, which was also filed in the Darlington County Circuit Court, has also been removed to this court, and bears the case number 4:20-cv-02042-SAL-KDW. Defendants urge the Court to take judicial notice of the Hartsville Complaint in regard to certain allegations contained in the instant Complaint. *See Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

**ALLEGATIONS OF THE COMPLAINT**

The salient facts supporting Lopez's Complaint are as follows: During the 2017-18 school year, Lopez was a student at Coker College, now Coker University, and a member of the men's

soccer team. Compl. ¶ 1. At all times relevant to this Complaint, Coker was and is a private university, but also the recipient of federal funds; therefore, like the vast majority of colleges and universities in this country, it is subject to Title IX of the Civil Rights Act. Compl. ¶ 13. Defendant Dr. Robert Wyatt was the University's President. Compl. ¶ 16. Defendant Brianna Douglas was the University's Title IX Coordinator. Compl. ¶ 14. Defendant Whitney Watts was the University's Dean of Students. Compl. ¶ 15.

On the morning of Sunday April 29, 2018, a female Coker student, Lauren Pearson ("Pearson"), notified the Hartsville Police Department that Lopez had "assaulted, restrained and raped her in the bathroom" at a party the night before. Compl. ¶¶ 39, 42. Based on this accusation, Lopez was arrested by law enforcement. Compl. ¶ 42. Lopez further asserts that, as a result of the assault accusation and arrest, the University imposed upon him what Lopez refers to throughout his Complaint as "Immediate Withdrawal." Compl. ¶¶ 4-6, 8, 14-17, 29, 37, 38, 46-58, 63, 68, 70, 81, 83, 84, 87, 89, 92, 97, 98, 99, 101, 103, 106, 115, 118- 21, 123, 125, 127, 132, 136, and 143. Lopez describes "Immediate Withdrawal" as a "punishment," which includes administratively withdrawing Lopez from the University; banning him from campus, and requiring that his belongings be collected from his dorm room. Compl. ¶ 4.

In the Hartsville Complaint, Lopez more accurately describes the action that the University took as "administrative withdrawal," resulting from reports that he had been arrested for "multiple serious and violent Class A felonies," specifically, Criminal Sexual Conduct, First Degree and Kidnapping. Hartsville Complaint ¶¶ 49, 52, 65. Specifically, the Hartsville Complaint states: "By the afternoon of his arrest, the University determined that [Lopez] posed a threat to faculty, staff, and other students based on reports of his arrest, and [Lopez] was administratively withdrawn from

3

school and banned from campus under a trespass notice." Hartsville Complaint ¶¶ 49, 65. Lopez spent the next five days in jail. Hartsville Complaint ¶ 73.

During those five days, the University conducted a Title IX investigation, which concluded that Pearson falsely accused Lopez of sexual assault. Compl. ¶ 89. Following the University's investigation, Pearson was expelled for her conduct. Compl. ¶ 64. Lopez's administrative withdrawal was promptly lifted in time for him to return to campus, take his exams with "certain accommodations," and complete the spring semester. Compl. ¶ 71. Lopez returned to Coker in the fall of 2018 but did not finish that semester. Compl. ¶ 77.

### **Documents referenced in the Complaint**

Although referenced generally throughout the Complaint, the relevant portions of the University's handbook and policies and procedures, specifically regarding administrative withdrawal, are not included in the Complaint. The Student Handbook states in part: "If a currently enrolled student is charged with a crime that would also be a violation of University regulations, the student may be administratively withdrawn until the case has been resolved by the court system." Ex. B. p.3. Similarly, the University's Student Sexual Misconduct Policy and Procedures state: "If the College's investigation is delayed temporarily while law enforcement is conducting its own investigation and gathering evidence, the College may take interim measures, up to and including discipline, when necessary to protect the alleged victim and the College community." Ex. C. p. 7. This policy also states: "If at any point during the complaint, investigative or disciplinary processes, the Title IX Coordinator reasonably believes that a Respondent who is a member of the College community poses a substantial threat of harm to other members of the campus community . . . or disrupts the stability and continuance of normal College operations and

functions, such person may be subject to disciplinary actions that could include summary suspension or administrative withdrawal . . . ." Ex. C. p. 8.

The Complaint fails to specify that Lopez's administrative withdrawal was lifted in full, and he was reinstated on May 4, 2018, around the same time he was released from jail. *See* Ex. D.

The Complaint also fails to explain that exams were the week of May 5-9, and because of Lopez's arrest and the several days he spent in jail, the University gave him additional time, after the exam period, so that he could prepare for and complete his exams. *See* Ex. E; *see also* Ex. F.

Finally, while the Complaint correctly notes that Pearson was ultimately expelled after the University determined that her allegations against Lopez were false, the Complaint does not explain that Pearson was initially administratively withdrawn on May 4, 2018, when she was charged and arrested for the crime of filing a false police report. *See* Ex. G.

### The question before the court

It appears that all of the alleged injuries about which Lopez complains flow from the University's decision to administratively withdraw him prior to determining whether there was any validity to the allegations Pearson made against him. The question raised by the instant Motion to Dismiss is whether, under the allegations of the Complaint, the attached documents, and other matters of record of which the Court may take judicial notice, the Complaint states a plausible claim under any of the liability theories asserted.

### LEGAL STANDARD

**A. Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F. 3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss for failure to state a claim on which relief can

be granted, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly* 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Similarly, the Court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F. 3d 175, 180 (4th Cir. 2000). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

### B. Consideration of Documents Referenced in the Complaint

The Complaint expressly refers to and relies upon several extrinsic documents, such as the University's Sexual Misconduct Policy and the Student Handbook. Additionally, the Complaint refers to the administrative withdrawal of Mr. Lopez, and the accommodations granted to him when he was reinstated. The Complaint also refers to disciplinary action the University took against Ms. Pearson when it determined that she had lied about the allegations. Finally, as noted above, Lopez has also filed a suit against the Hartsville Police Department, the City of Hartsville, and its employees challenging their handling of Ms. Pearson's allegations of sexual assault by Mr. Lopez, which prompted the University to take action against Mr. Lopez. Defendants have attached documents related to the above as exhibits to this Motion.

Although, as a general rule, extrinsic evidence is not considered at the 12(b)(6) stage, when a defendant attaches documents to its motion to dismiss, a court may consider the documents in

determining whether to dismiss the complaint if the documents are "integral to and explicitly relied on in the complaint" and if the plaintiff does not challenge the authenticity of the documents. *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x. 395, 396-97 (4th Cir. 2006); *see also Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting a district court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint). Here, the documents submitted by the Defendants are integral to and explicitly relied on in the Complaint, and they are central to the Lopez's claim. Most are already in the Lopez's possession and their authenticity should not be in dispute. Accordingly, this Court may consider them without converting this Motion to Dismiss into a motion for summary judgment.

## ARGUMENT

### A. The Court Should Dismiss the Title IX Claims Against All Defendants

Title IX provides that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.A. § 1681(a). Title IX is enforceable against educational institutions through an implied private right of action for monetary damages and injunctive relief. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 703 (1979) ("We have no doubt that Congress intended to create Title IX remedies comparable to those available under Title VI and that it understood Title VI as authorizing an implied private cause of action for victims of the prohibited discrimination.").

7

Lopez's Title IX claims are phrased as: 1) Gender Discrimination/Selective Enforcement/Deliberate Indifference; and 2) Erroneous Outcome. These are the theories articulated in the case of *Yusuf v. Vassar College,* 35 F.3d 709 (2nd Cir. 1994), the first case among the circuit courts to recognize a private Title IX cause of action on the grounds that a college's disciplinary proceeding was improperly motivated by the accused's gender. *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 374 (D.S.C. 2019). Courts in the Fourth Circuit as well as South Carolina District Courts have utilized this framework, and the elements necessary to state a cause of action are well-established.

Initially, these theories of liability are not applicable to this case as Lopez is not complaining about the outcome of a disciplinary proceeding conducted by the University. He is instead complaining about the University's decision to impose "administrative withdrawal" or temporary suspension after he was arrested by Hartsville Police on charges of criminal sexual assault and kidnapping. Such action is allowable and provided for in the University's Student Handbook and its Sexual Assault Policies and Procedures. *See* Ex. B, p. 26 and Ex. C, p. 7-8. Additionally, Lopez was fully reinstated within a few days of the University's initial decision to impose administrative withdrawal and he was allowed additional time to finish his exams and complete the school year. *See* Ex. D; *see also* Ex. F.  His administrative withdrawal lasted only as long as his term in jail. Accordingly, he was not wrongly "excluded from participating in or denied the benefits of" his education in a way that violates Title IX.

Assuming the *Yusuf* theories alleged can be stretched to fit the facts of this case, Lopez must, under either theory, allege sufficient facts showing that "gender bias was a motivating factor" behind the University's actions and that there was a "causal connection between the flawed outcome and gender bias." *Yusuf,* 35 F.3d at 715. In other words, he must put forth "particularized

8

allegation[s] relating to a causal connection between the flawed outcome and gender bias." *Id*. "Allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Id.*; *see also Doe v. Univ. of the South*, 687 F. Supp. 2d, 744, 756 (E.D. Tenn. 2009) (holding that a plaintiff must allege sufficient facts to show "the university in question operated with a sexual bias").

This Complaint is devoid of "particularized allegations" showing that the University administratively and temporarily withdrew Lopez *because of his gender,* as opposed to his status as a student criminally accused and arrested for two violent felonies. *See King v. DePauw Univ.*, Civil Action No. 2:14- cv-70, 2014 WL 4197507, at *10 (S.D. Ind., Aug. 22, 2014) ("[I]t would not be enough for [a male] accused to convince a jury that [the female accuser] received more favorable treatment from DePauw than he did; he would have to prove that the disparity in treatment was due to his gender, rather than his status as a student accused of sexual misconduct."). Indeed, the fact that the University ultimately took the same action against Pearson for the same reason—imposing administrative withdrawal based on criminal charges—demonstrates that the University's actions were not motivated by gender.

### 1. Individuals Are Not liable under Title IX

There is no individual liability under Title IX. "Title IX reaches institutions and programs that receive federal funds . . . which may include nonpublic institutions . . ., but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). Accordingly, the Title IX claims against the Individual Defendants should be dismissed.

### 2. Lopez Fails To Allege Facts Sufficient to Establish a Title IX Claim Under a Theory of "Gender Discrimination, Selective Enforcement or Deliberate Indifference"

Defendants interpret this claim as a selective enforcement claim.[1] A typical selective enforcement claim under Title IX "asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate [a disciplinary] proceeding was affected by the student's gender." *Yusuf*, 35 F.3d 709 at 715. To support a claim of selective enforcement, Lopez must demonstrate that Pearson "'was in circumstances sufficiently similar to his own and was treated more favorably by the [school].'" *Doe 2 by & through Doe 1 v. Fairfax Cty. Sch. Bd.*, 384 F. Supp. 3d 598, 608 (E.D. Va. 2019) (quoting *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 931 (S.D. Iowa 2018). Accordingly, Lopez must show that the University's actions against him "were motivated by his gender and that a similarly situated woman would not have been subjected to the same disciplinary proceedings." *Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015)*; see also Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 957 (N.D. Ill. 2017), *aff'd*, 933 F.3d 849 (7th Cir. 2019) (affirming dismissal of a selective enforcement Title IX claim where plaintiff failed to allege "that a female who, like him, had been accused of sexual assault would not have been subjected to the exact same disciplinary proceedings").

While Lopez alleges that he and Pearson were treated differently because he was immediately withdrawn while the University did not immediately withdraw Pearson, they were not initially accused of the same violations. Lopez was accused of criminal assault and kidnapping, while Pearson was accused of falsifying allegations. The Complaint does not allege any facts

---

[1] Gender discrimination is a necessary element for any Title IX claim, not truly a stand-alone violation. Deliberate indifference is also not a stand-alone violation but a theory of liability. *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 489 (D. Md. 2015) (citing *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998) (holding that deliberate indifference is the standard for imputing liability to an institution under Title IX)).

indicating that male and female students accused of rape and kidnapping are treated differently by the University in terms of the way that such cases are initially handled. *See Doe v. Univ. of Massachusetts-Amherst*, No. CV 14-30143-MGM, 2015 WL 4306521, at *9 (D. Mass. July 14, 2015) (dismissing a Title IX selective enforcement claim where the plaintiff did not allege any facts "indicating male and female students accused of sexual harassment are treated differently by the university in terms of the way complaints are pursued or discipline is imposed"). Additionally, Pearson was also administratively withdrawn when it was determined that she had been charged and arrested for making a false police report. *See* Ex. G. Arguably, she was treated more harshly than Lopez, because her administrative withdrawal followed an arrest for a more minor crime than the violent felonies alleged against Lopez.

### 3. Plaintiff Fails To Allege Facts Sufficient to Establish An Erroneous Outcome Claim.

The typical erroneous outcome claim alleges that "the plaintiff was innocent and wrongly found to have committed an offense." *Yusuf*, 35 F.3d at 715. "A plaintiff claiming erroneous outcome must allege: (1) 'particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding' and (2) 'a particularized . . . causal connection between the flawed outcome and gender bias.'" *Coastal Carolina Univ.,* 359 F. Supp. 3d at 374 (quoting *Yusuf*, 35 F.3d at 715). Lopez must then "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* (internal citations omitted). The *Yusuf* court noted that to establish the second element requiring "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding," a plaintiff could point to "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." 35 F.3d at 715.

11

Initially, this is not an erroneous outcome case as there was no disciplinary proceeding, Lopez was not adjudicated to have committed an offense through any proceeding, and he was only temporarily and administratively withdrawn from the University before being reinstated four days later upon his release from jail. Accordingly, Lopez should not be allowed to proceed under this theory based on the particular facts of this case.

To the extent Lopez attempts to stretch the erroneous outcome theory to fit these facts, there is no Title IX violation in the University's decision to impose administrative withdrawal for four days while Lopez was in police custody based on violent felony charges. The decision to administratively withdraw Lopez was not the result of the University's determination that he was guilty of the criminal charges against him. Instead, it was because, as Lopez alleges and admits in the Hartsville Complaint, "the University determined that Plaintiff posed a threat to faculty, staff, and other students based on reports of his arrest" for "multiple violent felonies." Hartsville Complaint ¶¶ 49, 65. As noted above, such action is specifically allowed and listed as a possible safety measure in the Student Handbook and Sexual Misconduct Policy. Moreover, Lopez was reinstated fully when the criminal charges against him were dropped, at which point the University administratively withdrew Pearson, Lopez's accuser for making a false police report. *See* Ex. G. That Pearson was treated exactly as Lopez was treated—that is, administratively withdrawn as a result of being arrested on criminal charges—should dispel any notion that the University was motivated by gender. For these reasons, the Title IX causes of action should be dismissed.

### B. Lopez's Due Process Claim Fails as a Matter of Law Because the University is a Private Institution Not Subject to the Constitution

Lopez asserts that in administratively withdrawing him without notice and an opportunity to be heard, the University denied him his due process under the Equal Protection Clause of the 14th Amendment to the U.S. Constitution. ¶¶ 112-128. Because Coker is a private, not a public

university, *see* Compl. ¶ 13, it and its employees are not public actors subject to violations of the 14th Amendment. *See Doe v. Washington & Lee University*, No. 6:14-CV-00052, 2015 WL 4647996, at *8 (4th Cir. Aug. 5, 2015) (holding that private universities are not bound by the Constitution's due process requirements in Title IX disciplinary hearings). The Fourth Circuit has identified three situations in which a private party's conduct can be considered governmental action: "(1) when there is either a sufficiently close nexus, or joint action between the [government] and the private party; (2) when the [government] has, through extensive regulation, exercised coercive power over, or provided significant encouragement to, the private actor; or (3) when the function performed by the private party has traditionally been an exclusive public function." *S.P. v. City of Takoma Park, Md.,* 134 F.3d 260, 269 (4th Cir.1998).  However, there are no allegations tending to support the application of any of these exceptions to this case. Accordingly, Lopez's due process claim should be dismissed as against all parties.

### C. Lopez's Negligence Claims Against All Defendants Should be Dismissed as a Matter of Law

Lopez claims Defendants were negligent in "failing to exercise due and required care in the performance of its duties and undertakings in the face of Pearson's false allegations against [Lopez]" Compl. ¶¶ 140-49. As noted above, Lopez's principle complaint is that he was administratively withdrawn following Pearson's false allegations and his subsequent arrest, and that in doing so, the University breached a duty owed to him. The alleged source of these duties are the "guidelines, procedures, and guarantees articulated in the University' policies, including, the Sexual Misconduct Policy and all procedures relating to the false accusations of sexual assault" and the "statutorily created duties arising under Title IX." Compl. ¶¶ 141-42.

"The determination of the existence of a duty is solely the responsibility of the court." *Hendricks v. Clemson Univ.*, 353 S.C. 449, 456–57, 578 S.E.2d 711, 714 (2003). (citing

13

*Miller v. City of Camden,* 329 S.C. 310, 494 S.E.2d 813 (1997)). "Whether the law recognizes a particular duty is an issue of law to be decided by the Court.*" Id*. "An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Id. "*Ordinarily, the common law imposes no duty on a person to act." *Id*.

### 1. Lopez's Complaint Fails to State Negligence Claims Against the Individual Defendants

Lopez asserts that the sources of the duties owed to him are the University policies and procedures. It follows that those duties are owed to him by the University only, and not the Individual Defendants. There are no allegations that any of the individuals had an independent duty to Lopez outside of their respective roles as University employees. Additionally, there are no specific allegations against any of the Individual Defendants as to what they did or failed to do in violation of the University's policies or procedures. For these reasons, even if the Court finds a duty owed by the University, the negligence claims against the Individual Defendants should be dismissed.

### 2. Lopez Cannot Base A State Law Negligence Claim on Title IX

Courts have held that Title IX cannot supply a duty actionable in a state law negligence claim. *See Cash v. Lees-McRae Coll., Inc.*, No. 1:18CV52, 2018 WL 7297876, at *14 (W.D.N.C. Aug. 13, 2018), *report and recommendation adopted*, No. 1:18-CV-00052-MR-WCM, 2019 WL 276842 (W.D.N.C. Jan. 22, 2019) (citing cases for the proposition that Title IX does not provide duties that can form the basis of a state law negligence claim); *Doe v. University of the South*, No. 4:09-CV-62, 2011 WL 1258104, at *14 (E.D. Tenn. Mar. 31, 2011) ("If the Court were to allow a regulation used in administering a federally-created right to create a state negligence *per se* claim, it would effectively eviscerate the *Gebser* rule [which stands for the proposition that the implied private right of action under Title IX does not allow recovery in damages merely for failing to

14

comply with Title IX's administrative requirements]); *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, No. 2:16-CV-7720-KM-MAH, 2017 WL 4074547, at *11 (D.N.J. Sept. 13, 2017) (concluding that a negligence *per se* claim cannot be based on Title IX because a it would constitute an impermissible "end-run" around the requirements of Title IX).

Arguably, all of the duties asserted by Lopez regarding his rights to fair treatment in the investigation of false allegations, the presumptions of innocence in the face of such allegations, and his right not to be deprived of his education, access to campus facilities, etc., *see* Compl. ¶ 143, are the same rights guaranteed under Title IX, which are reiterated in the University's Sexual Misconduct Policy. Accordingly, Lopez's negligence claims are preempted by Title IX's statutory scheme.

### 3. Even If Not Foreclosed By Title IX, the University Cannot Be Negligent Based on These Allegations

Defendants acted pursuant to University policies and procedures in administratively withdrawing Lopez following his arrest on two violent felonies. *See* Ex. B. p. 3; and Ex. C. p. 7-8. Such action was explicitly allowed and within the sole discretion of the University per the policy and procedures published in the Student Handbook and Sexual Misconduct Policy. Therefore, no duty was breached.

To the extent Lopez asserts that the University owed him a duty merely as a result of the student/college relationship, South Carolina courts have stated no such duty, sounding in negligence, exists. *Hendricks*, 353 S.C. at 457, 578 S.E.2d at 714. In *Hendricks*, the student plaintiff sued Clemson University when the plaintiff's adviser wrongly advised the student on compliance with NCAA eligibility standards, which resulted in the plaintiff being ineligible to play baseball under NCAA regulations. *Id.* The Court noted no such duty had been recognized in this State. *Id.* at 458, 578 S.E.2d at 715. The Court rejected the notion that a duty was created by

Clemson's voluntary undertaking to advise the student, noting that negligence cases involving a voluntary undertaking are limited to situations where the undertaking was to prevent physical, as opposed to economic, injury. *Id.*

Here, Defendants acted pursuant to University policies and procedures in administratively withdrawing Lopez. To the extent that, by its actions, the University undertook additional duties, Lopez suffered no physical harm as a result of the Defendants' actions.

For the above reasons, the negligence claims against all Defendants should be dismissed.

### D. The University did not Breach Any Contract With Lopez

"[T]here exists in every contract an implied covenant of good faith and fair dealing." *Commercial Credit Corp. v. Nelson Motors, Inc.*, 247 S.C. 360, 367, 147 S.E.2d 481, 484 (1966). "However, there is no breach of an implied covenant of good faith where a party to a contract has done what provisions of the contract expressly gave him the right to do." *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995).

South Carolina Courts have recognized that some, though not all aspects of the student/university relationship are subject to a contract remedy. *Hendricks*, at 460, 578 S.E.2d at 716. As a matter of pleading, the plaintiff must point to an "identifiable contract promise" that the University failed to honor. *Id.*

Here, Lopez asserts that the contract's terms are found in its Sexual Misconduct Policy, its Title IX policy, and "other mutual covenants arising under the University's [Student] handbook." Among those terms were, according to Lopez, "the University's promise and obligation to adhere to its Title IX and Sexual Misconduct Procedures" which include "affording [Lopez] basic due process rights before taking adverse action against him such as imposing Immediate Withdrawal." Neither the Handbook nor the Sexual Misconduct Policy require any due process before imposing

administrative withdrawal based on criminal charges. *See* Ex. B. p. 26; and Ex. C. p. 7-8.  Instead, as noted throughout, the handbook and policies state that the University may administratively withdraw a student charged with a crime.

Additionally, Lopez asserts the University contractually promised "not to deprive [Lopez] the right to his education, the campus facilities, school services, his regularly scheduled exams, and his dormitory without first determining that [Lopez] was responsible for alleged conduct that would justify such extreme punishment." No such specific contractual promise exists in any of the documents upon which the Complaint relies. Moreover, as noted above, Lopez was not deprived of his education by virtue of his administrative withdrawal. He was only withdrawn for so long as he was in jail. He was fully and automatically reinstated once the charges were dropped. He completed his exams under special accommodations offered by the University, and he successfully completed the spring term. Accordingly, the Complaint fails to state a breach of contract claim against the University.

## CONCLUSION

For the reasons stated above, the Complaint must be dismissed against all Defendants. If the Court determines any of the above Causes of Action state claims as against the University, sufficient to withstand this Motion to Dismiss, the Individual Defendants, nevertheless, should be dismissed for failure to state any claim against them upon which relief may be granted.

[*SIGNATURE BLOCK FOLLOWS ON NEXT PAGE*]

Respectfully Submitted,

DUFF | FREEMAN | LYON, LLC

By: *s/David N. Lyon*
    David T. Duff (FED ID #623)
    David N. Lyon (FED ID #12095)
    P.O. Box 1486
    Columbia, SC  29202
    Telephone: (803) 790-0603
    Facsimile: (803) 790-0605
    dduff@dfl-lawfirm.com
    dlyon@dfl-lawfirm.com

Attorneys for Defendants Coker University, Brianna Bunce Douglas, Whitney Watts, and Robert L. Wyatt

June 5, 2020
Columbia, South Carolina