IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Cesar Lopez, | ) | C/A No. 4:20-cv-02049-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION & ORDER** |
| Coker University, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Defendant Coker University's ("Defendant" or the "University") Motion to Dismiss Plaintiff Cesar Lopez's ("Plaintiff") Amended Complaint. [ECF No. 13.]¹ After a thorough review of the relevant case law and the arguments of the parties, the court grants the motion in part as to the Title IX claims and declines to exercise its supplemental jurisdiction over the state law claims.

**BACKGROUND**

Plaintiff, a former student of the University, filed this action in April 2020, asserting claims against Defendant and Defendant's employees related to Defendant's decision to administratively withdraw him from the University following his arrest. The action was removed to this court on the basis of federal question. [ECF No. 1.] Following the filing of Defendant's Motion to Dismiss, Plaintiff stipulated to the dismissal of Defendant's employees and filed an Amended Complaint. [ECF Nos. 9, 10.] In the Amended Complaint, Plaintiff asserts two claims for alleged violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88 ("Title IX"), breach of contract/breach of the covenant of good faith and fair dealing, and negligence. [ECF No. 10.]

---

¹ Defendant's First Motion to Dismiss, ECF No. 4, was rendered moot by the filing of the Amended Complaint on June 26, 2020. [*See* ECF No. 10.]

1

Plaintiff alleges that while he was a student at the University, a fellow student, Lauren Emily Pearson ("Pearson"), falsely accused him of sexual assault. [ECF No. 10 at ¶ 8.] "Around two hours after their intimate encounter"[2] on April 29, 2018, Pearson reported the alleged sexual assault to the Hartsville Police Department ("HPD"), and Plaintiff was arrested. *Id.* at ¶¶ 35, 36. Plaintiff was charged with "Criminal Sexual Conduct-1st Degree, and Kidnapping" and remained in jail from the morning of April 29, 2018, until he posted bond on May 2, 2018. *Id.* at ¶ 36. The University "learned of reports that Plaintiff was arrested for allegedly assaulting Pearson" and— "that same day"—determined he "should be administratively withdrawn from the school immediately." *Id.* at ¶ 53; *see also* Ex. D.[3]

Plaintiff asserts that prior to the events described above, Pearson falsely accused another student of sexual assault and the University knew or should have known of Pearson's prior false claims. *Id.* at ¶¶ 19–28. Plaintiff alleges that had the University investigated Pearson's allegations prior to issuing the administrative withdrawal, it would have discovered that the encounter between Plaintiff and Pearson was consensual and that Pearson had a history of false accusations. *Id.* at ¶ 66. It is undisputed that Pearson was ultimately arrested for filing a false police report, and the "University administratively withdrew [her] on the morning of May 4, 2018[.]" *Id.* at ¶ 67. The same day as Pearson's arrest, the University reinstated Plaintiff. *Id.* at ¶ 68; *see also* Ex. E.

---

[2] Plaintiff admits a consensual sexual encounter with Pearson. *Id.* at ¶ 32.

[3] Documents attached to a pleading are considered a part of that pleading for all purposes. Fed. R. Civ. P. 10(c); *see also Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (A court "may also consider documents attached to the complaint . . ., as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (A court may consider any document that is "integral to and explicitly relied on in the complaint."). Here, Plaintiff attaches the Student Handbook, Student Sexual Misconduct Policy, and the two relevant administrative withdrawal letters. [ECF Nos. 10-1 to 10-5.] Defendant does not challenge the authenticity of the documents; instead, it asks the court to consider them in ruling on this motion. [ECF No. 13-1 at pp.6–7.] This court can and, accordingly, will consider the documents in deciding this motion.

On April 29, 2020, Plaintiff filed this action against Defendant. Plaintiff claims that the University's decision to sanction Plaintiff without an investigation into the underlying allegations results in two violations of Title IX, breach of contract/breach of the covenant of good faith and fair dealing, and negligence. The matter is currently before the court on Defendant's Motion to Dismiss the Amended Complaint. [ECF No. 13.] Plaintiff responded to the Motion, and Defendant replied. [ECF Nos. 16, 19.] The matter is now ripe for resolution by this court.

## LEGAL STANDARD

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint[.]" *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In reviewing the complaint, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.,* 417 F.3d 418, 420 (4th Cir. 2005); *Ashcroft,* 556 U.S. at 662 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). The court need not, however, accept as true allegations that are contradicted by exhibits to the complaint. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted).

## DISCUSSION

The relevant facts as alleged by Plaintiff in the Amended Complaint are largely undisputed by Defendant, and, to the extent they are well-pleaded allegations and disputed by Defendant, this court accepts them as true in ruling on this motion. Defendant argues that taking all of the well-pleaded allegations as true and considering the exhibits attached to the Amended Complaint, it is entitled to dismissal of all causes of action asserted against it as a matter of law. The court examines each of Defendant's arguments in turn.

**I.   Title IX Claims.**

Title IX "prohibits federally supported educational institutions from practicing discrimination on the basis of sex." *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 132 F.3d 949, 957 (4th Cir. 1997), *rev'd en banc on other grounds*, 169 F.3d 820 (4th Cir. 1999). It protects both students and employees of federally-funded educational programs and provides:

> No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). At issue here is alleged discrimination against a male student with respect to University discipline.

While the Fourth Circuit Court of Appeals has not expressly adopted a test for student disciplinary Title IX claims, it recently recognized and applied the doctrinal tests employed by the Second Circuit Court of Appeals. *See Doe 2 by and through Doe 1 v. Fairfax Cty. Sch. Bd.*, No. 19-1702, 19-171, 2020 WL 6158091, at *1 (4th Cir. Oct. 21, 2020) (per curiam) (citing *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994) and noting the parties' agreement that the plaintiff in that case could "attempt to recover on his sex discrimination claim under either an erroneous outcome theory or a selective enforcement theory"). Further, given the lack of binding Fourth

Circuit authority in this area, courts in this District have looked to and applied the Second Circuit's *Yusuf* framework. *See Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 374 (D.S.C. 2019) (citing cases looking to and relying on *Yusuf*); *see also id.* at n.3 (noting "there is no binding authority on this matter"). Thus, given the parties' agreement that Plaintiff has two avenues for Title IX recovery and consistent application of *Yusuf* in this District, this court sees no reason to depart from applying the same framework here.

*Yusuf* recognized two theories on which an action related to a college disciplinary matter may proceed: (1) erroneous outcome and (2) selective enforcement. 35 F.3d at 715–16. An erroneous outcome claim asserts that "the plaintiff was innocent and wrongly found to have committed an offense." *Id.* at 715. "To prevail on an erroneous outcome claim, a plaintiff must (1) assert that he 'was innocent and wrongly found to have committed an offense'; (2) establish 'facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding,' and (3) demonstrate 'particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.'" *Doe 2*, 2020 WL 6158091, at *1 (citing *Yusuf*, 35 F.3d at 715).

In contrast, with a selective enforcement claim, the plaintiff asserts that "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate proceedings was affected by the student's gender." *Yusuf*, 35 F.3d at 715. While a plaintiff may plead both theories in the alternative, "in neither case do wholly conclusive allegations suffice for purposes of Rule 12(b)(6)." *Id.* (citation omitted). Both theories of liability are addressed below.

A. **Selective Enforcement.**

Defendant first argues that Plaintiff fails to state a Title IX claim based on a selective enforcement theory. [ECF No. 13-1 at pp.9–10; *see also* ECF No. 19 at p.2.] Specifically, Defendant contends that Plaintiff's comparator allegations are insufficient because Plaintiff and

Pearson were not accused of the same conduct. *Id.* at p.10.  In response, Plaintiff contends that its pleading sufficiently states a claim for selective enforcement because it sets forth detailed allegations related to the University's handling of a prior false allegation made by Pearson against another male student.  [ECF No. 16 at p.7.]  In that prior situation, the University sanctioned the male student without investigating the veracity of Pearson's allegations.  Plaintiff argues that this evidences a "pattern" of the University imposing a sanction without investigation when a male student is the accused.  *See id.*  Having considered the positions of the parties and the case law described below, the court agrees with Defendant.

To state a Title IX claim based on selective enforcement, Plaintiff must allege either the severity of the penalty received <u>or</u> the University's decision to initiate disciplinary proceedings was affected by his gender.  *Yusuf*, 35 F.3d at 715.  Accordingly, to survive dismissal, Plaintiff must allege that female student—Pearson, in this case—either received a lesser penalty for the same conduct or that the University opted against disciplinary proceedings for the female student under similar circumstances.  *See id.* at 716 (concluding male comparator in a male-plaintiff case was "not sufficient to allege selective enforcement"); *see also Doe v. Fairfax Cty. Sch. Bd.*, 403 F. Supp. 3d 508, 515 (E.D. Va. 2019) ("[A] male plaintiff must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the [school]." (citation omitted)).  For circumstances to be "sufficiently similar," "two individuals '*must have engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the [school's] treatment of them for it.'"  *Doe*, 403 F. Supp. 3d at 516 (citing *Sheppard v. Visitors of Va. State Univ.*, No. 3:18-cv-723, 2019 WL 1869856, at *5 (E.D. Va. Apr. 25, 2019)).

In this case, Pearson is the only female comparator identified by Plaintiff in support of his selective enforcement claims. Pearson falsely accused Plaintiff of sexual assault and was arrested for filing a false police report. [ECF No. 10 at ¶ 67; *see also* Ex. D.] In contrast, Plaintiff was accused of and arrested for alleged first degree criminal sexual conduct and kidnapping. *Id.* at ¶ 36. Both students were sanctioned with administrative withdrawals following their *arrests*. *Id.* at Exs. C, D. "[R]egardless of [each] student's guilt or innocence," *Yusuf*, 35 F.3d at 715, neither the underlying conduct giving rise to the arrests or the charges accompanying the arrests satisfy the "same conduct" requirement. Falsely accusing another student of sexual assault is not the "same conduct" as actually committing sexual assault. *Doe*, 403 F. Supp. 3d at 516. Moreover, an arrest for filing a false police report is not the same as an arrest for criminal sexual conduct and kidnapping. *See Sheppard v. Visitors of Va. State Univ.*, No. 3:18-cv-723, 2019 WL 6039953, at *2 (E.D. Va. Nov. 14, 2019) ("[T]he students faced different charges: Plaintiff faced misconduct charges for assaulting another student while the female students faced charges for theft."). To properly state a claim, Plaintiff would have to allege that he was treated differently than a female student who was also charged with criminal sexual conduct and kidnapping. *See id.* (finding plaintiff was not similarly situated where students faced different charges). Plaintiff has not, and, therefore, his selective enforcement theory under Title IX fails.

The court also agrees with Defendant that even if Pearson is an appropriate comparator, Plaintiff fails to properly allege that the corresponding penalties or decision to pursue discipline were impacted by gender. Plaintiff was administratively withdrawn by the University without notice, immediately following his arrest for first degree criminal sexual conduct and kidnapping. Pearson was administratively withdrawn by the University without notice, immediately following her arrest for filing a false police report. Thus, Plaintiff and Pearson received the same penalty—

administrative withdrawal—as well as the same disciplinary process—withdrawal without notice. Plaintiff admits as much in response to Defendant's motion. [ECF No. 16 at p.8 ("It is true that both Plaintiff and Pearson faced the sanction of administrative withdrawal from this shocking series of events, but the similarities end there.").] For this additional reason, Plaintiff's selective enforcement theory Title IX claim is subject to dismissal. *See Yusuf*, 35 F.3d at 715.

### B. Erroneous Outcome.

In addition to failing to state a claim pursuant to the selective enforcement theory, Defendant argues Plaintiff also fails to assert a legally cognizable claim pursuant to an erroneous outcome theory. [ECF No. 13-1 at pp.10–12; *see also* ECF No. 19 at pp.2–4.] Defendant contends first that this is not an erroneous outcome case because there is not an "outcome" of a disciplinary proceeding. Further, to the extent the court considers an erroneous outcome theory, Defendant argues that the facts alleged fail to set forth an erroneous outcome theory as a matter of law.

Plaintiff responds that the focus of his erroneous outcome theory is the University's decision to impose administrative withdrawal as a sanction without first *investigating* Pearson's allegations. [ECF No. 16 at pp.9–13.] According to Plaintiff, he has alleged an outcome, *i.e.*, administrative withdrawal prior to an investigation, and a causal connection between the outcome and gender bias. *Id.* at p.11.

Courts have held that to survive a motion to dismiss on an erroneous outcome claim, a plaintiff must allege: "(1) 'facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding' and (2) a 'particularized . . . causal connection between the flawed outcome and gender bias.'" *Doe v. Miami Univ.*, 882 F.3d 579, 592 (6th Cir. 2018) (citing *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016)). The Fourth Circuit in its recent *Doe 2* opinion referenced the test as having three elements: (1) assertion of innocence; (2) facts sufficient to cast

8

an "articulable doubt on the accuracy of the outcome of the disciplinary proceeding"; and (3) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." 2020 WL 6158091, at *1 (citing *Yusuf*, 35 F.3d at 715). "Simply put, [Plaintiff] must plead sufficient facts to create an inference that he was wrongfully accused and that he was wrongfully adjudicated guilty and disciplined, in part because of his gender." *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018). As outlined below, the court concludes that Plaintiff's allegations do not meet the second and third elements.

While the first element, assertion of innocence, is not generally at issue in Defendant's motion, the court finds it imperative to address this factor given that the parties do not agree on what constitutes the punishable "offense." *See Doe 2*, 2020 WL 6158091, at *1 (noting the first element is plaintiff's claim that he is "innocent and wrongly found to have committed an offense"). Defendant's arguments suggest that the punishable "offense" was the arrest itself, not the underlying conduct for which Plaintiff was arrested. If Defendant is correct, Plaintiff's erroneous outcome theory fails at the outset, given that Plaintiff admits he was *arrested* by HPD. [ECF No. 10 at ¶¶ 35, 36 (acknowledging arrest by HPD).] In contrast, Plaintiff's arguments suggest that he views the "offense" is the alleged sexual assault of Pearson. In that regard, Plaintiff clearly alleges that he is innocent: He claims the interaction with Pearson was consensual. If Plaintiff is correct that the University's sanction was a result of it finding that Plaintiff sexually assaulted and kidnapped Pearson, the Amended Complaint appropriately alleges the first element of the erroneous outcome theory. Having viewed the plain language of the April 29, 2018 sanction letter, it plainly states that Plaintiff is "administratively withdrawn . . . *due to* reports of [his] *arrest* for

9

. . . criminal activity." [ECF No. 10-3 (emphasis added).]⁴ Because Plaintiff does not dispute the fact that he was arrested, the court must conclude that Plaintiff has not sufficiently alleged his innocence. The court need not hang its hat on this conclusion alone, however.

Viewing all reasonable inferences in Plaintiff's favor, the facts alleged simply do not set forth an erroneous outcome case. The erroneous outcome theory address the situation in which a student is accused of some act that violates school policy, the school adjudicates the veracity of the alleged act, and it reaches a conclusion on whether the student is guilty or innocent of that act and imposes a sanction. Plaintiff's case does not line up with that scenario.

As noted above, the University's sanction letter states that Plaintiff is "administratively withdrawn" because of "reports of [his] arrest[.]" [ECF No. 10-3.] It does not find Plaintiff guilty of sexual assault or kidnapping, nor does it sanction Plaintiff for this alleged conduct. It does not adjudicate Plaintiff's guilt or innocence of the charges of first degree criminal sexual assault or kidnapping. Instead, it suggests that his guilt or innocence in that regard will be determined by the "legal proceedings." *Id.* ("After your legal proceedings are completed, you must apply for readmission[.]").

From Plaintiff's perspective, however, the University assumed his guilt and imposed the sanction without an investigation into the veracity of Pearson's allegations. While this court does not think the facts state a Title IX claim for erroneous outcome, the court will consider the two remaining elements of the theory in accordance with Plaintiff's contentions out of an abundance of caution.

---

⁴ Pearson's administrative withdrawal letter includes similar language tying the administrative withdrawal to her "arrest." [ECF No. 10-4.]

Turning to the second element, the court must determine whether Plaintiff states facts sufficient to cast an "articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Doe 2*, 2020 WL 6158091, at *1 (citing *Yusuf*, 35 F.3d at 715). A plaintiff can satisfy this element at the pleading stage by alleging "procedural flaws in the investigatory and adjudicative process, . . . inconsistencies or errors in the adjudicator's oral or written findings, or . . . . [by] challenging the overall sufficiency and reliability of the evidence." *Doe,* 297 F. Supp. 3d at 584. This is "not a significant barrier" and is one a plaintiff often surpasses. *Id.* The procedural deficiency identified by Plaintiff is the complete absence of an investigation by the University prior to it imposing the sanction. *See id.* (concluding allegations that plaintiff "was deprived of opportunity to identify and interview potential witnesses, to gather exculpatory evidence, to meet with the adjudicator in person, and to cross-examine" were sufficiently alleged "procedural deficiencies"). Accordingly, if this court assumes that the University's sanction punished Plaintiff for the alleged sexual assault and kidnapping without investigating those allegations, the court must agree with Plaintiff that he has sufficiently alleged this second element.

Even accepting Plaintiff's theory, he fails to sufficiently allege the third and final element—a "particularized" causal connection between the outcome and gender bias. *Doe*, 403 F. Supp. 3d at 516. With this element, the court asks whether Plaintiff has alleged particularized "factual material that creates a plausible inference that the University's decision was infected by gender bias." *Doe,* 297 F. Supp. 3d at 585. "[A] Title IX plaintiff successfully alleges gender bias if he or she points to statistical evidence of gender bias in the University's decision making, policies and procedures that are designed to reach gender-specific outcomes, and/or statements by university officials evidencing gender bias." *Id.* (citing *Cummins*, 662 F. App'x at 452). In this case, Plaintiff fails to identify any "statistical evidence of gender bias" in the University's handling of sexual assault

11

allegations, any "policies or procedures" that are gender specific," or any statements by Brianna Douglas—the relevant decision-making University official—that evidence gender bias. Plaintiff, as a result, has not alleged the third element to support an erroneous outcome theory.

For all of these reasons, the court concludes that Plaintiff's Title IX claims fail as a matter of law and are subject to dismissal.

## II. State Law Claims.

Having determined that Plaintiff's Title IX claims must be dismissed, only Plaintiff's state law claims for breach of contract/breach of the covenant of good faith and fair dealing remain. The court must now decide whether to exercise its supplemental jurisdiction over those remaining claims.

Federal district courts may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away. *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995); 28 U.S.C. § 1367(c)(3). District courts enjoy wide latitude in exercising this discretion. They generally consider the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy" in reaching a decision. *Shanaghan*, 58 F.3d at 110. "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S.

343, 350 (1988); *see also Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 616 (4th Cir. 2001) ("[A] court may dismiss the claim or, if it was removed, remand it to State court.").

Each of the above-listed factors favors this court declining supplemental jurisdiction here. The only federal claims are dismissed, this case is at its early stages with only state-law claims remaining, and there are no underlying issues of federal policy. At this early stage in the litigation, remanding this action to state court will not result in a waste of judicial resources or unfairness to either party. Thus, the court declines it supplemental jurisdiction and remands the breach of contract/breach of the covenant of good faith and fair dealing and negligence claims to state court.

## CONCLUSION

For the reasons outlined herein, Defendant Coker University's Motion to Dismiss the Amended Complaint is **GRANTED in part** as to the Title IX claims. Accordingly, the Title IX claims are **DISMISSED**. Further, the court declines to exercise its supplemental jurisdiction over the remaining state law claims for breach of contract/breach of the covenant of good faith and fair dealing and negligence, and those claims are **REMANDED** to the South Carolina Court of Common Pleas for Darlington County.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

December 22, 2020
Florence, South Carolina

13